UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
DOREL ANDERSON                                                    CV

                                    Plaintiff,

          -against-                                              **COMPLAINT**

NEW YORK CONVENTION CENTER                                       **JURY TRIAL REQUESTED**
OPERATING CORPORATION AND FANATICS
HOLDINGS, INC.

                                    Defendants.
---------------------------------------------------------------x

## <u>COMPLAINT</u>

Plaintiff Dorel Anderson (hereafter referred to as "Plaintiff"), by counsel, The

Parker Law Group P.C., as and for the Complaint in this action against Defendants New

York Convention Center Operating Corporation and Fanatics Holdings, Inc. (together

referred to as "Defendants"), hereby alleges as follows:

## <u>NATURE OF THE CLAIMS</u>

1.       This lawsuit opposes pervasive, ongoing, and inexcusable disability

discrimination by the Defendants.  In this action, Plaintiff seeks declaratory, injunctive,

and equitable relief, as well as monetary damages, nominal damages, and attorney's fees,

costs, and expenses to redress Defendants' unlawful disability discrimination against

Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42

U.S.C. §§ 12181 *et. seq.* and its implementing regulations; Title II of the Americans with

Disabilities Act ("ADA") 42 U.S.C. § 12131 et seq. and its implementing regulations,

Section 504 of the Rehabilitation Act ("Section 504" or "Rehabilitation Act") 29 U.S.C. §

794, *et seq*; the New York State Human Rights Law ("NYSHRL"), Article 15 of the New

York State Executive Law ("Executive Law"); the New York State Civil Rights Law, §

1

40 *et. seq.*; and the New York City Human Rights Law ("NYCHRL"), Title 8 of the

Administrative Code of the City of New York ("Administrative Code"). As explained

more fully below, Defendants own, lease, lease to, operate, and control a place of public

accommodation that violates the above-mentioned laws.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. §

12188, and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions

regarding the deprivation of Plaintiff's rights under the ADA. The Court has

supplemental jurisdiction over Plaintiff's related claims arising under the New York State

and City laws pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because

Defendants' acts of discrimination alleged herein occurred in this district and

Defendants' place of public accommodation that is the subject of this action is in this

district.

## PARTIES

4.      Defendant New York Convention Center Operating Corporation is a New

York State public benefit corporation and is a public entity within the meaning of 42

U.S.C. § 12132 of the ADA. Defendant New York Convention Center Operating

Corporation owns a public entity within the meaning of 42 U.S.C. § 12132 of the ADA.

5.      Defendant New York Convention Center Operating Corporation owns the

property located at 429 11th Avenue in New York County, New York (hereinafter

referred to as "429 11th Avenue").

6.     At all relevant times, defendant New York Convention Center Operating Corporation has and continues to operate a convention center at 429 11th Avenue (hereinafter referred to as the "Javitz Center" premises).

7.     Defendant New York Convention Center Operating Corporation does business as the Javits Convention Center.

8.     Defendant Fanatics Holdings, Inc. ("Fanatics") owns and operates the largest network of sports and collector fan events around the world.  These events offer fans the opportunity to come together in-person to celebrate all aspects of fandom—collectibles, memorabilia, fashion, music, and entertainment—and participate in unique fan experiences.

9.     In 2024, Fanatics launched Fanatics Fest.

10.     Fanatics Fest brings together fans across all sports to celebrate their passions under one roof at the Javits Center. It includes the world's first immersive and interactive sports fan festival and the largest arena for collectibles.

11.     Upon information and belief, defendant Fanatics Holdings, Inc. leases convention center space from the defendant New York Convention Center Operating Corporation in order to create and operate Fanatic Fest.

12.     Each defendant is licensed to and does business in New York State.

13.     At all times relevant to this action, Plaintiff Dorel Anderson has been and remains currently a resident of Brooklyn, New York.

14.     At all times relevant to this action, Plaintiff Dorel Anderson has been and remains a wheelchair user.  Plaintiff has medical conditions that inhibit walking and restrict body motion range and movement.

15.     For most of her life, Plaintiff has been a huge fan of wrestling.  She religiously watches World Wrestling Entertainment (aka "WWE") Monday Night Raw.

16.     While watching a WWE Monday Night Raw, Plaintiff saw advertisements for Fanatic Fest at the Javits Center.

17.     The advertisement explained that Plaintiff could, among other things, see famous wrestlers in person and obtain their autographs.

18.     Plaintiff purchased tickets for the 2024 Fanatic Fest at the Javits Center, which was held on August 16 to August 18, 2024.

19.     In August 2024, Plaintiff attended the 2024 Fanatic Fest at the Javits Center.

20.     For the 2024 Fanatic Fest, the Javits Center had a designated ADA entrance and waiting line for persons with disabilities.

21.     Plaintiff utilized the designated ADA entrance and designated waiting line.

22.     Plaintiff then received her admission badge as well as an ADA sticker placed on her badge.

23.     Plaintiff needed to use a restroom and asked the staff in the designated ADA interior entrance area where she can use an accessible bathroom.

24.     A staff person took plaintiff to the women's bathroom on Level 1, which was adjacent to the waiting area in front of Elevator 2.

25.     Plaintiff went inside this women's bathroom and rolled to the toilet stall marked as being wheelchair accessible.

26.     Plaintiff opened the stall door, went inside, and then attempted but could

not close the stall door.

27.     This designated toilet stall lacked sufficient interior space for plaintiff to be able to close the stall door while in her wheelchair.

28.     Because of the lack of privacy as well as the fact that other persons were using the adjacent stalls, Plaintiff could not use this bathroom.

29.     Plaintiff left this bathroom and asked a staff person if there was a larger bathroom available.  The staff member took pity on Plaintiff and allowed her to use one of the larger bathrooms reserved for the sports celebrities.

30.     After this bathroom incident, Plaintiff traveled throughout the 2024 Fanatics Fest areas.

31.     Plaintiff was able to see and meet a number of famous wrestlers. Plaintiff took photographs with four wrestlers.

32.     Aside from the wheelchair inaccessibility, Plaintiff enjoyed her time at Fanatics Fest and desired to continue to go to future Fanatics Fests.

33.     In 2025, Plaintiff purchased tickets for the Fanatics Fest at the Javits Center.

34.     Fanatics Fest 2025 transformed the Javits Center into a three-day, immersive arena for sports & collectibles, attracting over 125,000 fans, almost double the 2024 attendance.

35.     Iconic stars like Tom Brady, LeBron James, Kevin Durant, Derek Jeter, Peyton & Eli Manning, Rhea Ripley, Travis Scott, and more appeared for live conversations, photo-ops, and autograph signings.

36.     On Saturday, June 21, 2025, Plaintiff attended the 2025 Fanatic Fest at

the Javits Center.

37.     For the 2025 Fanatic Fest, the Javits Center had a designated ADA entrance and waiting line for persons with disabilities.

38.     Plaintiff utilized the designated ADA entrance and designated waiting line.

39.     Plaintiff then received her entrance badge as well as an ADA sticker placed on her badge.

40.     Plaintiff asked a staff member where the accessible bathroom was and the staff member directed Plaintiff back to the same women's bathroom on Level 1.

41.     Plaintiff went into this bathroom with hopes that the toilet stall had been remediated since her last visit in 2024.  But this bathroom had not been remediated.

42.     Plaintiff experienced and encountered numerous inaccessible conditions at the 2025 Fanatic Fest and those architectural barriers are catalogued in great detail below.

43.     Overall and despite the architectural barriers, Plaintiff enjoyed the 2025 Fanatic Fest.

44.     Plaintiff met and took photographs with wrestlers and the Olympic gymnast Jordan Chiles.

45.     Plaintiff intends to return to future Fanatic Fests including the 2026 Fanatic Fest.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

46.     Each of the Defendants is a public accommodation as they own, lease, lease to, control or operate a place of public accommodation, the Javitz Center premises

located at 429 11th Avenue, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102(9)).

47.     The Javitz Center premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code (§ 8-102(9)).

48.     As of 2021, the Javits Center has a total interior area of 3.3 million square feet. It is billed as one of the busiest convention centers in the United States.

49.     Since opening in 1980, the Javits Center has undergone significant expansions and alterations throughout its history including a 2006-to-2010-billion-dollar expansion; a 2010 to 2014 renovation costing $465 million; and 2016 to 2021 expansion of 1.2 million square feet at a cost of $1.5 billion.

50.     The services, features, elements and spaces of the Javitz Center premises are not readily accessible to, or usable by Plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design (hereinafter referred to as the "1991 Standards" or the "1991 ADA") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design (hereinafter referred to as the "2010 Standards" or the "2010 ADA").

51.     Because of Defendants' failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, Plaintiff was and has been unable to enjoy safe, equal, and

complete access to all of the areas of the Javitz Center premises that are open and available to the public.

52.    Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, and/or the Building Code of the City of New York ("BCCNY").

53.    Barriers to access that Plaintiff experienced, encountered and/or which deter Plaintiff from patronizing the Javitz Center and Fanatics Fest as well as architectural barriers that exist include, but are not limited to, the following:

## MEZZANINE LEVEL BETWEEN LEVEL 3 AND LEVEL 4

I.  Defendants fail to provide accessible vertical access to the mezzanine level above the ground floor.  42 U.S.C. § 12183(b); and 28 C.F.R. §§ 36.404(a) and 36.401(d)(2).

II.  Defendants fail to provide access up to the mezzanine level area, and no elevator exists to take a wheelchair user to the mezzanine level.  See 1991 Standards §§ 4.1.3, 4.1.6; and the 2010 Standards §§ 206.2.2, 206.2.3, 206.2.3.1, 206.2.4, 206.2.6.

III.  Defendants fail to provide access to all the dining areas inclusive of the mezzanine level dining area and the building has an elevator.  See 1991 Standards § 5.4; and the 2010 Standards §§ 206.5, 206, 403.

IV.  Defendants fail to provide access to the mezzanine level area dining area, and the service and décor in the mezzanine level area dining area is different, including, but not limited to, seating with expansive views.  See 1991 Standards §§ 5.4, 4.3; and the 2010 Standards §§ 206.2.5, 206, 402.2.

V.  Defendants fail to provide that at least one and not less than 5% of seating and standing spaces and/or dining surfaces are accessible and dispersed throughout the premises.  See 1991 Standards §§ 4.1.3(18), 4.32, 5.1; 2010 Standards §§ 226, 226.1, 226.2, 902.1; BCCNY §§ 1108.2.9.1, 1109.11; and Administrative Code § 27-292.10(3).

VI.  Defendants fail to provide an accessible route of at least 36 inches of minimum width to all dining areas and seating.  See 1991 Standards §§ 5.3, 4.32.2; 2010 Standards §§ 403, 206.2.5, 902.2; and BCCNY § 1108.2.9.

VII.   Defendants fail to provide the minimum required maneuvering clearances of level and clear space in front of the seating for dining.  See 1991 Standards §§ 4.32.2, 5.3; and 2010 Standards §§ 305.3, 802.1.2, 802.1.3, 902.2, 903.1, 903.2, 902.4.1.

VIII.   Defendants fail to provide a space for dining where plaintiff's wheelchair does not overlap the accessible route and/or a space that adjoins an accessible route.  See 1991 Standards §§ 4.32.2, 5.1, 5.3; and 2010 Standards §§ 305.6, 802.1.4.

IX.   Defendants fail to provide a space for dining where plaintiff's wheelchair does not overlap the general circulation path and/or emergency egress routes.  See 1991 Standards §§ 5.1, 5.3, 4.32.2, 4.2.4; and 2010 Standards § 802.1.5.

X.   Defendants fail to provide the International Symbol of Accessibility at its designated accessible seating.  BCCNY § 11010.1(9).

XI.   Defendants fail to provide dining tables and/or surfaces that are at an accessible height.  See 1991 Standards §§ 4.32.4, 5.1; and 2010 Standards § 902.3.

XII.   Defendants fail to provide dining tables and/or surfaces that have the minimum required knee clearances.  See 1991 Standards §§ 4.32.3, 5.1; and 2010 Standards §§ 305.4, 306.

XIII.   Defendants fail to provide dining tables and/or surfaces that have the minimum required toe clearances.  See 1991 Standards §§ 4.32.3, 5.1; and 2010 Standards §§ 305.4, 306.

## LEVEL 1 – DIFARA AND NUCHAS

I.   At the Di Fara and Nuchas food vendor locations, Defendants fail to provide the sales and/or service counter is accessible.  See 1991 Standards § 7.2; 2010 Standards §§ 227.3, 227.1, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

II.   At the Di Fara and Nuchas food vendor locations, Defendants fail to provide that at least one of each type of function counter is accessible and dispersed throughout its premises.  See 1991 Standards §§ 7.2, 7.3(1); 2010 Standards §§ 227.3, 904; and BCCNY §§ 1109.12, 1109.12.3.

III.   At the Di Fara and Nuchas food vendor locations, Defendants fail to provide a portion of the sales and/or service counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction in a manner like non-disabled customers.  See 1991 Standards § 7.2; 2010 Standards §§ 227.1, 227.3, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

## LEVEL 1 – DRIBBLE & GRAZE

I.  Defendants fail to provide that the running slope of the ramp/walkway is no greater than the maximum permissible slope.  See 1991 Standards §§ 4.1.3(1), 4.3.7, 4.8.1, 4.8.2; and 2010 Standards § 405.2.

II.  Defendants have not used the least steep possible slope for the ramp/walkway. See 1991 Standards § 4.8.2; and 2010 Standards § 405.

III.  Defendants fail to provide that the handrails extend at least 12 inches beyond the top and bottom of the ramp/walkway in a parallel and rounded return.  See 1991 Standards §§ 4.8.5(2), 4.8.5(6); and 2010 Standards § 505.10.

IV.  Defendants fail to provide that the end of the handrail is rounded and not a blunt edge.  See 1991 Standards § 4.8.5(6); and 2010 Standards § 505.8.

**FANATICS SPORTSBOOK & CASINO BAR**

I.  Defendants created a structure that has five steps leading up to the Fancash Drop and by so doing, fail to provide accessible vertical access to the Fancash Drop above the ground floor.  42 U.S.C. § 12183(b); and 28 C.F.R. §§ 36.404(a) and 36.401(d)(2).

II.  Defendants fail to provide access to the Fancash Drop, and no wheelchair accessible vertical access (i.e. platform lift, ramp or elevator) exists to take a wheelchair user to the Fancash Drop.  See 1991 Standards §§ 4.1.3, 4.1.6; and the 2010 Standards §§ 206.2.2, 206.2.3, 206.2.3.1, 206.2.4, 206.2.6.

III.  Defendants fail to provide at least 5% of the work and use table surfaces provided to patrons are accessible and dispersed throughout their premises.  See 2010 Standards §§ 226.1, 226.2, 902; and BCCNY § 1109.11.

IV.  Defendants fail to provide at least one and not less than 5% of seating and standing spaces and/or dining surfaces are accessible and dispersed throughout the premises.  See 1991 Standards §§ 4.1.3(18), 4.32, 5.1; 2010 Standards §§ 226, 226.1, 226.2, 902.1; BCCNY §§ 1108.2.9.1, 1109.11; and Administrative Code § 27-292.10(3).

**FANATICS LIVE BREAKING ARENA**

I.  Defendants created two structures that have four steps leading up to the Breaking Arena and by so doing, fail to provide accessible vertical access to the Breaking Arena above the ground floor.  42 U.S.C. § 12183(b); and 28 C.F.R. §§ 36.404(a) and 36.401(d)(2).

II.  Defendants fail to provide access to the Breaking Arena, and no wheelchair accessible vertical access (i.e. platform lift, ramp or elevator) exists to take a

wheelchair user to the Breaking Arena.  See 1991 Standards §§ 4.1.3, 4.1.6; and the 2010 Standards §§ 206.2.2, 206.2.3, 206.2.3.1, 206.2.4, 206.2.6.

## NIKE AREA IN FANATICS FEST

I.  At the Nike site, Defendants fail to provide the sales and/or service counter is accessible.  See 1991 Standards § 7.2; 2010 Standards §§ 227.3, 227.1, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

II.  Defendants fail to provide that at least one of each type of function counter is accessible and dispersed throughout its premises.  See 1991 Standards §§ 7.2, 7.3(1); 2010 Standards §§ 227.3, 904; and BCCNY §§ 1109.12, 1109.12.3.

III.  Defendants fail to provide a portion of the sales and/or service counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction in a manner like non-disabled customers.  See 1991 Standards § 7.2; 2010 Standards §§ 227.1, 227.3, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

IV.  Defendants fail to provide the minimum required maneuvering clearances of level and clear space for an accessible path of travel to and from the sales and/or service counters.  See 1991 Standards §§ 4.3, 4.2, 4.2.4, 4.32.2, 5.3; and 2010 Standards §§ 305, 305.3, 305.5, 305.6, 802.1.2, 802.1.3, 902.2, 903.1, 903.2, 902.4.1.

V.  Defendants fail to provide sufficient clear space of 30 inches by 48 inches in front of the sales and/or service counter from which to conduct the transaction.  See 1991 Standards § 4.2.4.1, 7.1, 7.2; and 2010 Standards §§ 305, 904.4.

VI.  Defendants fail to provide an accessible route to approach the sales and/or service counters, thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction.  See 1991 Standards §§ 7.1, 4.3; and 2010 Standards §§ 904.2, 403.

VII.  Defendants fail to provide an accessible route to exit the sales and/or service counters thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction.  See 1991 Standards §§ 7.1, 4.3; and 2010 Standards §§ 904.2, 403.

## RAISING CANE'S TAILGATE FOOD TRUCK IN FANATICS FEST

I.  Defendants fail to provide the sales and/or service counter is accessible.  See 1991 Standards § 7.2; 2010 Standards §§ 227.3, 227.1, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

II.   Defendants fail to provide that at least one of each type of function counter is accessible and dispersed throughout its premises.  See 1991 Standards §§ 7.2, 7.3(1); 2010 Standards §§ 227.3, 904; and BCCNY §§ 1109.12, 1109.12.3.

III.  Defendants fail to provide a portion of the sales and/or service counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction in a manner like non-disabled customers.  See 1991 Standards § 7.2; 2010 Standards §§ 227.1, 227.3, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

IV.   Defendants fail to provide the minimum required maneuvering clearances of level and clear space for an accessible path of travel to and from the sales and/or service counters.  See 1991 Standards §§ 4.3, 4.2, 4.2.4, 4.32.2, 5.3; and 2010 Standards §§ 305, 305.3, 305.5, 305.6, 802.1.2, 802.1.3, 902.2, 903.1, 903.2, 902.4.1.

V.    Defendants fail to provide sufficient clear space of 30 inches by 48 inches in front of the sales and/or service counter from which to conduct the transaction.  See 1991 Standards § 4.2.4.1, 7.1, 7.2; and 2010 Standards §§ 305, 904.4.

VI.   Defendants fail to provide an accessible route to approach the sales and/or service counters, thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction.  See 1991 Standards §§ 7.1, 4.3; and 2010 Standards §§ 904.2, 403.

VII.  Defendants fail to provide an accessible route to exit the sales and/or service counters thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction.  See 1991 Standards §§ 7.1, 4.3; and 2010 Standards §§ 904.2, 403.

VIII. Defendants fail to provide that the sales and/or service counters have accessible reach ranges from which to conduct a transaction.  See 1991 Standards §§ 5.6 and 4.2; 2010 Standards §§ 904.5.1, 308, 227.4.

IX.   Defendants fail to provide food service lines with the preferred clear width of 42 inches or even the minimum clear width of 36 inches thereby preventing plaintiff from being able to complete a purchase in the same manner as a non-disabled customer.  See 1991 Standards § 5.5; 2010 Standards §§ 227.4, 403, 904.5; and BCCNY § 1109.12.4.

## LEVEL 2 CHARGING STATIONS

I.    Defendants fail to provide at least 5% of the work and use table surfaces provided to customers are accessible and dispersed throughout their premises.  See 2010 Standards §§ 226.1, 226.2, 902; and BCCNY § 1109.11.

II. Defendants fail to provide that the reach ranges for the operable controls of the outlets are accessible.  See 1991 Standards §§ 4.2.5, 4.2.6; and 2010 Standards §§ 308, 308.2.1, 308.3.1.

## LEVEL 1 BATHROOM ADJACENT TO ELEVATOR 2

I. Defendants fail to provide an accessible public toilet room.  See Standards §§ 4.23, 4.18, 4.19, 4.17, 4.24, 4.22, 4.1.6(e) and 4.1.3(11); 2010 Standards §§ 213.1, 213.2, 603.1, 604, 605, 606; Administrative Code §§ 27-292(b), 27-292.12, RS-16, and P104.09(c); and BCCNY § 1109.2.

II. At the inaccessible public toilet room, defendants do not provide and display the International Symbol of Accessibility with the required information indicating the location of a designated and nearest accessible public toilet room.  See Standards §§ 4.1.6(3)(e)(iii), 4.1.3(16)(a), 4.1.2(7), 4.30, 4.30.6, 4.30.7; 2010 Standards §§ 216.3, 216.8, 703, 703.7.2.1; BCCNY § 1110.1.

III. Defendants do not provide and display the International Symbol of Accessibility alongside the toilet room door at the latch side between 48 and 60 inches above the finished floor.  See Standards § 4.1.2(7)(d), 4.1.3(16)(a), 4.30, 4.30.6, 4.30.7; 2010 Standards §§ 216.2, 216.3, 216.8, 703.7.2.1, 703.

IV. Defendants fail to provide the minimum required maneuvering clearance of level and clear floor space inside the toilet room.  See 1991 Standards §§ 4.16.2, 4.17.3, 4.23.3, 4.22.3; and 2010 Standards §§ 604.3, 604.8.1.1; and Administrative Code §§ 27-292, RS-16, and P104.09(c).

V. Defendants fail to provide that the minimum required floor space free of obstructions and/or fixtures exists inside the toilet room.  See 1991 Standards § 4.16.2, 4.23.3, 4.22.3; and 2010 Standards § 604.3.2.

VI. Defendants fail to provide the minimum required turning diameter of 60 inches of level and clear space inside the toilet room.  See 1991 Standards § 4.2.3; 4.23.3, 4.22.3; and 2010 Standards §§ 603.2.3, 304.

VII. Defendants fail to provide that the pipes under the lavatory are insulated, nonabrasive, or otherwise protected against contact thereby exposing plaintiff to severe personal injury.  See 1991 Standards §§ 4.1.3(11), 4.19.4, 4.22.6, 4.24.6; and 2010 Standards §§ 213.3.4, 606.5.

VIII. Defendants fail to provide that the bottom edge of the reflecting surface of the mirror above the lavatory is no greater than 40 inches above the finished floor.  See 1991 Standards §§ 4.1.3(11), 4.19.6, 4.23.6, 4.22.6; and 2010 Standards §§ 213.3.4, 603.3, 213.3.5.

IX.   Defendants fail to provide the minimum required clear floor space in front of the toilet seat cover dispenser.  See 1991 Standards §§ 4.1.3(11), 4.22.7, 4.27.2, 4.2.4; and 2010 Standards §§ 205.1, 309.2, 305.

X.   Defendants fail to provide that at least one accessible toilet stall exists along an accessible route.  See 1991 Standards §§ 4.22.4, 4.17.1; and 2010 Standards §§ 213.3.1, 604.8.

XI.   Defendants fail to provide a toilet stall with the minimum required clear floor toe clearance.  See 1991 Standards § 4.17.4; and 2010 Standards § 604.8.1.4.

XII.   Defendants fail to provide the minimum required unobstructed floor space in front of the lavatory in the public toilet room.  See 1991 Standards §§ 4.19.3, 4.1.3(11), 4.22.3, 4.22.6, 4.23.2 4.24.5; and 2010 Standards §§ 213.3.4, 606.2, 305, 306.

54.    Defendants have denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

55.    Defendants have not complied with their statutory obligation to ensure that their policies, practices, and procedures for persons with disabilities are compliant with the laws.  Nor have Defendants made or provided accommodations or modifications for persons with disabilities.

56.    Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within the Javitz Center premises continue to exist and deter Plaintiff.

### FIRST CAUSE OF ACTION AS AGAINST FANATICS HOLDINGS, INC.
### (VIOLATIONS OF TITLE III OF THE
### AMERICANS WITH DISABILITIES ACT)

57.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

58.    Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct

and proximate result of Plaintiff's disability, Plaintiff uses a wheelchair for mobility and has restricted use of arms and hands.

59.    The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

60.    Under the ADA, both the property owner and lessee are liable to the Plaintiff, and neither can they escape liability by transferring their obligations to the other by contract (i.e., lease agreement).  28 C.F.R. 36.201(b).

61.    Defendant Fanatics Holdings, Inc. has and continues to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is a person with a disability.  Defendant Fanatics Holdings, Inc.'s policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

62.    By failing to comply with the law in effect for decades, Defendant Fanatics Holdings, Inc. has articulated to people with disabilities such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

63.    Defendant Fanatics Holdings, Inc. has discriminated against the Plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled Plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

64.    The Javitz Center and Fanatics Fest premises are not fully accessible and fail to provide an integrated and equal setting for people with disabilities, in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

65.    Defendant Fanatics Holdings, Inc. failed to make alterations accessible to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2).

66.    The paths of travel to the altered primary function areas were not made accessible in violation of 28 C.F.R. § 36.403.

67.    Defendant Fanatics Holdings, Inc. failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make Defendant Fanatics Holdings, Inc.'s place of public accommodation fully accessible.

68.    By failing to remove the barriers to access where it is readily achievable to do so, Defendant Fanatics Holdings, Inc. has discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

69.    In the alternative, Defendant Fanatics Holdings, Inc. has violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

70.    Defendant Fanatics Holdings, Inc.'s failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

16

71.    Defendant Fanatics Holdings, Inc. has and continues to discriminate against Plaintiff in violation of the ADA by failing to maintain and/or create a wheelchair accessible public accommodation.

**SECOND CAUSE OF ACTION AS AGAINST**
**NEW YORK CONVENTION CENTER OPERATING CORPORATION**
**(VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT)**

72.    Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

73.    Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

74.    The term "disability" includes physical and mental impairments that substantially limits one or more major life activities.  Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of plaintiff's disability, plaintiff uses a wheelchair for mobility and also has restricted use of arms and hands. 42 U.S.C. § 12102(2).

75.    A "public entity" includes state and local governments, their agencies, and their instrumentalities. 42 U.S.C. § 12131(1).

76.    Defendant New York Convention Center Operating Corporation qualifies as a public entity within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104.

77.    Section 35.151(a)(1) of 28 C.F.R. Part 35 requires that "Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be

designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992."

78.    Section 35.151(b)(1) of 28 C.F.R. Part 35 requires that: "Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992."

79.    Section 35.151(c) of 28 C.F.R. Part 35 requires that all physical construction or alterations commenced after July 26, 1992 must comply with either the Uniform Federal Accessibility Standards (aka "UFAS") or the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design ("1991 Standards") or the revised final regulations implementing Title II of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design ("2010 Standards").

80.    Defendant New York Convention Center Operating Corporation has and continues to subject plaintiff to disparate treatment by denying plaintiff full and equal opportunity to use the Javitz Center and Fanatics Fest premises all because plaintiff is disabled.  Defendant's policies and practices have disparately impacted plaintiff as well.

81.    By failing to comply with the law in effect for decades, defendant New York Convention Center Operating Corporation has articulated to disabled persons such

18

as the plaintiff that they are not welcome, objectionable and not desired as patrons of the Javitz Center and Fanatics Fest premises.

82.    Defendant New York Convention Center Operating Corporation's facility is not fully accessible and fails to provide an integrated and equal setting for the disabled, all in violation of the ADA.

83.    Section 35.151(b)(4) of 28 C.F.R. Part 35 requires that: "an alteration that affects or could affect the usability of or access to an area of the facility that contains a primary function shall be made so as to ensure that, to the maximum extent feasible, the path of travel to the altered area and the restrooms, telephones, and drinking fountains serving the altered area are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, unless the cost and scope of such alterations is disproportionate to the cost of the overall alteration."

84.    Upon making alterations to the primary function areas, defendant New York Convention Center Operating Corporation failed to make the paths of travel to the primary function areas accessible to plaintiff.

85.    Defendant New York Convention Center Operating Corporation violated the ADA because it has failed to "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1).

86.    Also known as the "program access" requirement and, as explained in the preamble to the regulations of Title II, "although Title II may not require removal of barriers in some cases where removal would be required under Title III, the program access requirement of Title II should enable individuals with disabilities to participate in

19

and benefit from the services, programs, or activities of public entities in all but the most

unusual cases." Preamble to Regulations on Nondiscrimination on the Basis of Disability

in State & Local Government Services, 28 C.F.R. Pt. 35, App. A.

87.    Defendant New York Convention Center Operating Corporation failed to

enable individuals with disabilities to participate in and benefit from the services,

programs, or activities of the facility at issue.

### THIRD CAUSE OF ACTION AS AGAINST
### NEW YORK CONVENTION CENTER OPERATING CORPORATION
### (VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT)

88.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the

regulations promulgated thereunder, prohibit discrimination against people with

disabilities by recipients of federal funding. Section 504 provides, in pertinent part,

that:

> No otherwise qualified individual with a disability . . . shall,
> solely by reason of her or his disability, be excluded from the
> participation in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving Federal
> financial assistance . . . .

89.    Upon information and belief, Defendant New York Convention Center

Operating Corporation has received federal financial assistance at all relevant times.

90.    Through the acts and omissions alleged herein, defendant New York

Convention Center Operating Corporation has, solely because of plaintiff's disabilities,

excluded plaintiff from participation in defendant's programs and activities and denied

plaintiff the benefits of defendant's programs and activities, and subjected plaintiff to

discrimination in violation of 29 U.S.C. § 794, et. seq. and the regulations promulgated

thereunder.

91.    Defendant New York Convention Center Operating Corporation's

acts and omissions described herein violate the equal access and nondiscrimination provisions of Section 504 and the regulations promulgated thereunder and have resulted in injury to plaintiff.

92.     Defendant New York Convention Center Operating Corporation acted with deliberate indifference to plaintiff's rights guaranteed under Section 504.

93.     Defendant New York Convention Center Operating Corporation has had actual knowledge of the discrimination due to, among other things, the open and obvious nature of the discriminatory condition and deliberately decided not to address the discrimination and institute corrective measures.

## FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)

94.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

95.     Plaintiff has various medical conditions that separately and together prevents the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore has a disability within the meaning of the Executive Law § 296(21).

96.     In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed".  See Executive Law § 300 [effective date: August 12, 2019].

97.    By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

98.    Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation all because Plaintiff is a person with a disability.

99.    Defendants discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the Defendants has aided and abetted others in committing disability discrimination.

100.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL (Executive Law § 296(2)(c)(iii)).

101.    In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of NYSHRL (Executive Law § 296(2)(c)(iv)).

102.    It would be readily achievable to make Defendants' place of public accommodation fully accessible.

103.    It would not impose an undue hardship or undue burden on Defendants to make their place of public accommodation fully accessible.

22

104.    As a direct and proximate result of Defendants' unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including, but not limited to, humiliation, embarrassment, stress, and anxiety.

105.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)

106.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

107.    Plaintiff has various medical conditions that separately and together impairs Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range - and thus Plaintiff has a disability within the meaning of the NYCHRL (Administrative Code § 8-102(16)).

108.    Defendants have and continue to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).  Each of the Defendants has aided and abetted others in committing disability discrimination.

109.    Defendants have and continue to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) because of the violations of the ADA as alleged herein.

110.    Defendants have discriminated and continue to discriminate against Plaintiff in violation of the NYCHRL (Administrative Code § 8-107(4)) by designing, creating, and/or maintaining an inaccessible commercial facility/space.

111.    Defendants have subjected, and continue to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

112.    Defendants' policies and procedures inclusive of the policies of refusing to expend funds to design, create and/or maintain an accessible commercial facility/space is a discriminatory practice in violation of NYCHRL (Administrative Code § 8-107(4)).

113.    In violation of the NYCHRL (Administrative Code § 8-107(6)), Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

114.    Defendants' conduct also violates the NYCHRL, Administrative Code 8-107 (17), which states that "an unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

115.    Because Defendants' public accommodation is not readily accessible and usable by people with disabilities, Defendants have demonstrated a policy or practice that has a disproportionately negative impact on people with disabilities (including Plaintiff).

116.    Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL.  Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.  Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' public accommodation.

117.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including, but not limited to, humiliation, stress, and embarrassment.

118.    Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the NYCHRL.

119.    By failing to comply with the law in effect for decades, Defendants have articulated to people with disabilities such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

120.    Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL (Administrative Code § 8-502).

121.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

122.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

<u>**JURY DEMAND**</u>

Plaintiff demands a trial by jury on all claims so triable.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.   Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, Section 504, NYSHRL and NYCHRL and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B.   Issue a permanent injunction ordering **Defendants to close and cease all business** until Defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, NYSHRL and NYCHRL, including, but not limited to, the violations set forth above;

C.   Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not recur;

D.  Award Plaintiff compensatory damages and nominal damages because of Defendants' violations of Section 504, the NYSHRL and the NYCHRL;

E.  Award Plaintiff punitive damages to punish and deter the Defendants for their violations of the NYCHRL;

F.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the NYCHRL, Section 504, and the ADA; and

G.  For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: July 15, 2025
     New York, New York

Respectfully submitted,

**THE PARKER LAW GROUP P.C.**

By:_____
    Glen H. Parker, Esq.
    Attorneys for Plaintiff
    28 Valley Road, Suite 1
    Montclair, New Jersey 07042
    Telephone: (347) 292-9042
    Email: ghp@parkerlawusa.com